(101 App. Div. 581.)

## DURFIELD v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. February 24, 1905.)

**1. GREATER NEW YORK CHARTER—ERECTION OF BANNER POLES—NEGLIGENCE—DUTY OF LICENSEES.**

The fact that a banner pole was erected in a street pursuant to an ordinance passed under Greater New York Charter, Laws 1897, p. 19, c. 378, § 49, subd. 14, authorizing the municipal assembly to enact ordinances in relation to exhibiting banners in or across streets, did not relieve the persons erecting it from the exercise of care commensurate with the dangers apparent and to be foreseen.

**2. SAME—PATRIOTIC MOTIVE—EFFECT.**

A patriotic motive is no excuse for negligence endangering the public safety.

**3. DEATH—VERDICT—EXCESSIVENESS.**

In a statutory action to recover for death, a verdict in excess of $5,000 cannot be sustained.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, § 122.]

**4. ACTION FOR DEATH—EVIDENCE—ADMISSIBILITY—NEW TRIAL.**

In an action against a city and certain individuals for the death of a person caused by the breaking of a banner pole in a street of the city, where the complaint did not charge the city with negligence in failing to have the pole properly guyed, evidence was not admissible against the city that the pole was not properly guyed.

**5. SAME—NEGLIGENCE—QUESTION FOR JURY.**

In an action against a city and others for death caused by the breaking of a banner pole erected in the street, evidence examined, and whether the city was negligent in failing to test the pole after its erection *held* a question for the jury.

Appeal from Trial Term, New York County.

Action by Jacob J. Durfield, as administrator of the estate of Charles W. Durfield, deceased, against the city of New York and others. From a judgment for plaintiff, defendants appeal. Affirmed conditionally.

This is a statutory action to recover for the death of Charles W. Durfield. On the 12th day of September, 1900, the decedent was walking down Broadway, and at about 9:30 o'clock was struck by the top of a banner pole erected on the north side of Duane street a little west of Broadway, which inflicted injuries resulting in his death. The pole was erected by the individual appellants in the latter part of August, 1900, pursuant to a permit from the city, through its department of highways, granted on the 8th day of August, 1900, as the westerly support for a political banner which they swung across Broadway, supported on the east by a similar pole. The westerly pole was of cedar, and about 60 feet in length, 1 foot in diameter at the base, and from 2¾ to 4 inches in diameter at the top. They also obtained permission to open the pavement. The base of the pole was sunk five feet below the surface of the street near the curb. After erecting the poles, they suspended an open network banner, 20 by 40 feet in dimensions, from a galvanized wire connecting the poles near the top. On the morning of the accident there was a strong wind, which attained a maximum velocity of about 60 miles an hour at about the time of the accident. The pole broke eight feet from the top, and fell to the walk. Evidence was given on the part of the plaintiff tending to show that at the point of the break there was a small knot, which, however, did not materially affect the strength of the pole, and a "gum-streak" and "heart-shake," which materially weakened it, but were not observable by

casual inspection. They were discoverable, however, by well-known tests of tapping or sounding the pole. Evidence was also given tending to show that the pole was carefully selected and properly tested by the licensees before it was erected, and no defect discovered. The complaint was framed, and the action was tried, on the theory of negligence. The court submitted the question of the negligence of the licensees and of the city to the jury. The complaint fairly charged the licensees with negligence both in failing to discover the defects in the pole and in failing to properly secure it by guy ropes or wires. The negligence charged against the city, however, was limited to permitting the erection of a pole of insufficient strength for the purpose for which it was to be used. Upon the trial evidence was given tending to show that this pole was not properly guyed, and that if it had been, even though it broke, it would not have fallen to the ground. The narration of the evidence in the record shows that, during the direct examination of a witness called by the plaintiff, he testified: "There were no guys or stays to that pole except what I have stated; it was not guyed or stayed to any building." The questions and answers are not given, so that we are unable to tell whether this evidence was in answer to a specific question calling for it, or a general question not indicating it, or was volunteered by the witness. The record, however, shows that the counsel for the city thereupon objected to the evidence upon the ground that the complaint contained no allegation of negligence against the city by reason of the manner in which the pole was guyed. The court overruled the objection, and counsel for the city excepted. The witness was then permitted to proceed, and stated that there was nothing to check the pole from falling to the ground when the snap came, and that if the pole had been guyed as the easterly pole was, by divergent guy ropes, the guy ropes would have prevented the pole from falling to any great extent.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Theodore Connoly, for appellant city of New York.
Leon Lewin, for other appellants.
George Ryall, for respondent.

LAUGHLIN, J. Subdivision 14 of section 49 of the Greater New York Charter, as amended (Laws 1897, p. 19, c. 378), authorized the municipal assembly to enact ordinances "in relation to exhibiting banners, placards or flags, in or across streets, or from houses or other buildings." Pursuant to this authority, the municipal assembly in the year 1900 passed an ordinance known as "Approved No. 515," granting permission to all political parties "to erect, place and keep transparencies, erect poles and swing banners therefrom, the commissioner of highways consenting thereto, and where banners are swung from houses, the property owners consenting thereto. The work to be done and materials supplied at their own expense." The permit for the erection of the pole at this place was issued by the superintendent of the bureau of street openings, paving, and repaving, pursuant to this ordinance, and it provided that the work was to be done "to the entire satisfaction of this department," and it was approved by the commissioner of highways.

In view of this provision of the charter and of this ordinance and of the permit, it was doubtless lawful for the licensees to erect a pole at this point for the support of the banner, but in doing so they were required to exercise care commensurate with the dan-

gers apparent and to be foreseen. The evidence shows, and doubtless we might take judicial notice of the fact, that, while we do not daily experience a gale of wind of 60 miles an hour, the wind occasionally, and not infrequently, in this latitude does attain that or a greater velocity. The licensees were called upon to exercise the care and caution that reasonably prudent men would exercise in securing the erection of a pole of sufficient strength, in view of the strain of the banner upon it, to withstand such storms of wind, hail, rain, or sleet as from past experience might be expected in this locality in the season during which they permitted the banner to remain over the street. Their motives were doubtless patriotic; but that is no excuse for neglect which endangered public . safety. They were called upon to know that,· unless they were competent to understand the strength of the material and the effect upon it of winds and storms, they were endangering public travel. If they did not possess the necessary knowledge of these things, they were called upon to employ or act upon the advice of others who did. If this pole had been selected and tested with proper care, and if it had been properly secured in place, we agree with the jury that the accident would not have happened. The liability of the licensees, therefore, was fairly established. We are of opinion, however, that the verdict—$10,000—is excessive, and that it should be reduced to $5,000.

We are of opinion, further, that the city must be awarded a new trial for the error in receiving evidence against it that· the pole was not properly guyed. The complaint did not charge the city with negligence in that respect. The evidence was material. The jury might have found that the pole would not have broken, notwithstanding its defects, if it had been properly guyed, and also that it would not have fallen to the ground if it did break.

The learned counsel for the city strenuously contends that the complaint should have been dismissed or a verdict directed in favor of the city, because it appears that the defects in the pole were not discoverable by casual inspection with the naked eye. This question will likely arise upon a new trial, and therefore should receive an expression of our views for the guidance of the trial court. The evidence shows that the city, after granting the permit, paid no attention to the erection of these poles. It neither inspected the poles nor supervised their erection. Its failure to perform its duty would not render it liable if it clearly appeared that the defects would not have been discovered by the full performance of this duty. We think this was a question for the jury. It cannot be maintained as matter of law that the city is not chargeable with negligence in permitting a licensee to erect an obstruction in and over a public street which, although apparently safe on the exterior, is in fact unsafe owing to defects that would have been discovered by the application of ordinary and well-known tests. The city had full control over this matter. It could grant or refuse the license at will. In granting the license, it could have imposed conditions and restrictions tending to insure the protection of the

public against the negligence of the licensee. It could have required as a condition of granting the permit that a competent inspector be employed by the city, at the expense of the licensee, or it could have required a bond of indemnity which would have protected the city, and, incidentally, have aroused the licensees to greater care and caution. We do not mean to be understood as holding that it was the duty of the city as matter of law, in the circumstances of this case, to test the pole. We merely decide that that was a matter for the jury in the circumstances. If the licensees were competent and employed competent men to select and test the poles, a jury might very well determine that, if the city through its representatives observed that this was done, it was not called upon to make a further test. It cannot, however, be held as matter of law that, if the city had exercised proper care in supervising the erection of the pole, it would not have discovered either that the pole was unsuitable, owing to its defects, or was improperly erected, in that it was not properly guyed. In the present state of the pleadings, however, liability for the failure to properly guy the pole cannot be predicated as against the city.

It follows, therefore, that the judgment and order should be reversed as to the individual appellants, and a new trial granted as to them, with costs to said appellants to abide the event, unless the respondent stipulates to reduce the judgment as entered, including interest and costs, to the sum of $5,206.42, in which event the judgment as so modified and order appealed from are affirmed, without costs; and, as to the city, the judgment and order are reversed and a new trial granted, with costs to the appellant to abide the event. All concur.

INGRAHAM, J. I concur with Mr. Justice LAUGHLIN in the modification and affirmance of the judgment against the individual defendants, and in the reversal of the judgment against the city. I think, however, that the evidence is not sufficient to justify a finding that the city was negligent.